(No. 4792.   April 26, 1928.)

AMALGAMATED SUGAR COMPANY, a Corporation, Respondent, v. JOHN MURDOCK and CATHERINE W. MURDOCK, His Wife, Appellants.

[268 Pac. 12.]

E. M. Holden, for Appellants.

Clark, Richards & Bowen and P. M. Condie, for Respondent.

TAYLOR, J.—The Amalgamated Sugar Company, plaintiff-respondent, brought this action to foreclose two mortgages. The defendants, John Murdock and wife, answered admitting the execution of the mortgages, but alleged three other agreements executed as a part of the same transaction, and that they had been induced to execute the mortgages and agreements by fraudulent representations, alleged an election to rescind, and asked that the instruments be canceled and the action dismissed. This appeal is from a judgment of foreclosure.

The contracts involved are conceded and are:

(1) Two mortgages, securing the payment of two promissory notes representing amounts equal, in the aggregate, to $60 an acre for the land of defendants.

(2) A refunding agreement, by which plaintiff agreed to pay the outstanding indebtedness of the district, and—"expend in the investigation, construction and reconstruction of said irrigation system an amount equal to the difference between the said indebtedness of said district . . . . and the principal represented by the aggregate amount of the mortgages of the second parties hereto (defendants) and the mortgages of others who are to remain in said district, or so much of said difference as may be necessary, said construction and reconstruction to be done in accord-

ance with the plans outlined and to be outlined by W. D. Beers, the engineer investigating said work, and said work to be carried on and completed under his direction, or under the direction of such engineer as the first party (plaintiff) may designate.''

(3) An agreement and lease whereby defendants agreed to sell to plaintiff all beets grown on their lands at the prevailing price in the locality.

(4) A supplemental agreement providing that all papers executed between the plaintiff and defendants should be placed in escrow, to be delivered to plaintiff upon the approval of the sufficiency of the water supply by the state engineer of Idaho, and interpreting parts of the refunding agreement which had ''not appeared to (defendants) as entirely clear.''

Defendants alleged that they were induced to execute the mortgages and agreements by false and fraudulent representations: (1) That the plaintiff would construct and enlarge the irrigation system in question for not to exceed $60 per acre; and (2) that defendants could pay the mortgages by delivery of sugar-beets; and specify as error that the proof established these false and fraudulent representations, and that in each case the evidence was insufficient to support the contrary finding of the court.

Defendants owned lands in the Oneida Irrigation District which, in 1917, had a bonded indebtedness amounting, with accrued interest, to nearly three-quarters of a million dollars. The district had no credit, its irrigation system had fallen into disrepair, and it was unable to deliver water to the lands of the district. In these circumstances, the plaintiff, Amalgamated Sugar Company, conferred with a committee appointed by the land owners within the district, and agreed to finance the land owners in rehabilitating their irrigation system. Plaintiff, in pursuance of this plan, entered into agreements with the owners of 13,000 acres of the land within the district, which was to be reduced to that size.

Some time after the execution of the agreements the Oneida Irrigation District was dissolved, and in its place was created the Twin Lakes Canal Company, which took over the irrigation system, and in which defendants held stock. After the reconstruction of the irrigation system by plaintiff under the refunding agreement it became advisable, in the opinion of the officers and directors of the Twin Lakes Canal Company, to make further improvements and changes in the system, such as the construction of tunnels, the lining of flumes with concrete, the construction of concrete control works, etc., and in order to enable the Twin Lakes Canal Company to do this work plaintiff advanced on one occasion $279,100, for which the canal company issued bonds and gave a trust deed to secure their payment, and on another occasion $100,000, for which the canal company gave its promissory note secured by a mortgage, these acts being authorized by the stockholders at regularly called meetings. Defendants argue that the land owners served by the irrigation system, and they themselves in proportion, are burdened with an extra debt of $379,100 above the indebtedness represented by the notes and mortgages here sued on, amounting to $29 per acre upon defendants' lands, and that this is in violation of the agreements, and establishes the falsity of the alleged representation that the cost should not exceed $60 per acre.

Plaintiff adduced evidence to show that it spent the money covered by the mortgages from the individual land owners, representing $60 an acre, in discharging the indebtedness of the district, and in work upon the irrigation system, which was admitted by defendants; that the subsequent changes and improvements covered by the bonds and mortgage from the Twin Lakes Canal Company were unforeseen at the time of the original reconstruction; and that in any event neither it nor its agents represented to defendants that they would ''complete'' the reconstruction of the system for not to exceed $60 an acre.

Defendants argue that their contention is ''placed beyond serious dispute'' by the provision of the refunding agree-

ment above quoted and the terms of the mortgages, which each contains the following clause:

" . . . . The mortgagee herein (plaintiff) will expend or cause to be expended without further charge or lien, additional moneys to investigate, construct, repair, reconstruct and enlarge reservoirs and the canal system . . . . "

In the next paragraph, however, the mortgages provide that the amount to be expended by plaintiff shall be "not exceeding, in the aggregate, the amount of this mortgage debt, together with all other mortgages to the second party (plaintiff) for the purpose of financing said district."

Defendants argue that the words above quoted, "without further charge or lien," bear out their contention. But the words clearly refer to the money to be advanced by plaintiff, "not exceeding, in the aggregate, the amount of this mortgage debt, together with all other mortgages to the second party for the purpose of financing said district."

It is plain that the intention of the parties was not that plaintiff should undertake to construct, without further expense to defendants, a complete new irrigation system, whatever its cost; but that plaintiff should advance money equal to the security given by the land owners, first to discharge all the bonded indebtedness of the district and then use the remainder in the repair and reconstruction of the irrigation system.

In any event, the evidence as to the alleged representations was conflicting, and, the court having found for the plaintiff, we will not disturb the decision.

Appellants argue that the Twin Lakes Canal Company had no power to issue bonds or execute a note and mortgage as it did. If appellants are right, then they have suffered no harm by the acts of the canal company of which they complain. But that is not a matter which can be litigated here because it is not in issue. The Twin Lakes Canal Company is not a party to this proceeding. This is not an action to cancel or to enforce the obligations of the canal company, nor is it attempting to collect assessments or anything whatever from defendants.

The second assignment is likewise without merit. As to the testimony, the most that can be said is that the evidence is conflicting. But the defendants maintain that the agreement and lease substantiates their contention. By this instrument defendants agreed to deliver to plaintiff "all sugar-beets that may be grown on said lands, herein set forth," during the term of the mortgages, and plaintiff promised to "pay for such beets as may be so grown at the current and prevailing prices for beets paid by the second party in Franklin County, Idaho, and Cache County, Utah." The agreement gave plaintiff "a lien upon any beets so grown . . . . with the right . . . . to take possession thereof . . . . upon payment or offer of payment therefor . . . . "

This was not an agreement to allow defendants to pay their indebtedness with sugar-beets and not to require money. It was merely an agreement that defendants would sell to plaintiff, "at the current and prevailing prices," such beets as defendants should grow. Defendants did not undertake to grow any beets at all; and if their argument were sound, they could avoid payment of the indebtedness by the simple expedient of growing no beets. Defendant John Murdock on the witness-stand admitted that plaintiff offered to contract for all the beets defendants wanted to grow.

In view of the foregoing conclusions, we need not discuss respondent's contention that the alleged "representations" were not representations at .all, but warranties, and promises to perform in the future, and that a defense of fraud cannot be based upon them, but only an action or counteraction for breach of contract.

The judgment is affirmed. Costs to respondent.

Budge, Givens and T. Bailey Lee, JJ., concur.